and Mr. Godey Good morning, Your Honor. Mateo Godey of Paul Weiss for petitioner Cristina Rangel-Fuentes. With the court's permission, I'd like to reserve five minutes for rebuttal. That often doesn't work, but we'll see how the time goes. Thank you, Your Honor. May it please the court. The qualifying relative provision sets a precondition for discretionary cancellation of removal. It requires non-citizens to establish that removal would result in a hardship to a parent, a spouse, or as in this case, a child. But as this court held in Martinez-Perez, that provision does not directly identify the point in time at which the age of a child should be determined. After Loper-Bright, it is now this court's duty to determine what the best reading of that provision may be. And petitioner's fundamental submission is that common usage, statutory history and context, and the canons of construction, including the rule of lenity, confirm that the best reading of the qualifying relative provision is that it looks at no later than when the immigration judge closes the record. Counsel, the government suggests that after Loper, there's not a lot of work for us to do. That we can look at Martinez-Perez through the lens of statutory stare decisis and we don't need to do much work in this case. What do you say to that? A couple of things, Your Honor. So what Loper-Bright held is that it was not meant to disturb prior decisions that relied on Chevron and found that a particular interpretation of a statutory provision was lawful. If this court had gone the extra step in Martinez-Perez and not only held that the provision is ambiguous, but that in fact a particular interpretation was the lawful one, then the government's argument would make sense. But as the court recognized in its prior panel decision, which is now being vacated, Martinez-Perez did not go that extra step precisely because the board had not exercised this right there. The board had thought that it lacked jurisdiction because as soon as the child aged out, it had no authority to interpret the statutory provision at all. So there is nothing to defer in this court's precedent under Loper-Bright. I understand that. They said since it aged out, but that deprived it of jurisdiction. But that was interpreting the statute to say if the child ages out, then it's too late to get relief. What this court did in recognizing that the board had jurisdiction was saying, we know there is a few different ways in which this provision may be interpreted. And the court went on to list a few of them. It could be the time of the application. It clearly said it was ambiguous. Right. But then it didn't go on and pick one interpretation. It just said it's ambiguous. It could be the time of the hearing. It could be the time of application. It could be the time of adjudication. It could be some other time. And we sent it back to the board to pick one of those interpretations. But the court did not say one of these is the lawful one, is the best one. And that is our fundamental submission here is that if you look at the statutory context and the history of the ways in which the statute was amended, and you utilize the various canons of construction, including the rule of lenity, you can see that the best reading is that the latest point in time is the closure of the record. So our point of departure is still ambiguity, right? We're not here suggesting that the panel should overturn circuit precedent. We think that Martinez-Perez is fine. But we don't give it statutory stare decisis under LOPR because it's not a specific agency action. That's your position, right? Our position is that you don't give it statutory stare decisis insofar as it did not pick one interpretation. But we do think that the ambiguity holding, that's the law of the circuit, and that is sort of the starting point here. And that is why I think that this court's task is to then figure out how to narrow that ambiguity and whether it's possible to pick one particular time. Or, as we argue, it's not necessary for the court to pick a particular time in this case and it need not. And, in fact, the best reading is simply that the latest point in time is the closure of the record. And I say that because each case may be different. There are some cases in which a non-citizen attaches evidence to their application. The government stipulates to a cancellation of removal. There's never a hearing. There's never a formal closure of the record. And so the establishing happens at the time of application. There are other cases in which hearings are held, record is open, evidence is taken in. It may be kept open for a little longer, as it was in this case. There was a question on eligibility. And the immigration judge expressed on the record said, I'm going to hold it open for a few more weeks so that additional evidence can come in to determine eligibility. Can I ask you to back up a little bit? You mentioned that, you know, sometimes the evidence is attached to the petition. Wasn't the evidence here not as to hardship but as to the status of the child? Wasn't that attached to the petition? Isn't that in the form of a birth certificate that would show both the date of birth and citizenship? Yes. So in a lot of senses, the petitioner had at least established as of the date of the application the age of the child. Yes. Obviously, the age changes, but the proof of that age and the citizenship is already established. Correct. I think we, you know, that is true in this case because the child, and it's true at a later point in time. Right. In which case. It never changes, does it? It doesn't change. From the date of the application, if the proof is attached, which it would need to be. It doesn't change, but the question is then, when is statutory eligibility determined under the statute? And if you look at 1229. Well, your view is that it's when that proof is established. Our view is. I understand it, and that's what I'm asking you about in terms of that particular aspect of the qualifications. Isn't that established at the time of the application? Yes, the age changes, but the proof of age is what really matters. I think an argument could be made here that the establishing happened at the closure of the record. For the reason I mentioned earlier, there was a question about whether Fernando, Ms. Ringel's son, was still a child because he was unmarried. During the testimony, he referred to his wife, and then a question arose. Is that a common law marriage? Is it a legal marriage? Is that just a relationship? And so the immigration judge said, wait a minute. This goes to eligibility. This goes to whether or not there is exceptional hardship to a child of someone who's below the age of 21 and unmarried. So I'm going to hold the record open, and I'm going to let additional evidence come in on the status of their relationship. So the additional evidence came in, and at the closure of the record, it was established that it was a child, as in someone who was below the age of 21 and who was unmarried. Let me ask you. You've said that several times. There was a dispute between counsel the last time we heard this case about what can happen after it's closed and before the order is established. And I'm sorry. I don't recall who argued. Maybe it was not you. Said that, no, it couldn't be reopened after this closure because of new dispositive evidence, and the government attorney said it could. If, okay, so this provision provides for relief if the child or spouse, I can't remember who else.  Parent is, would be terribly harmed by the departure. If the spouse died in the interim before the order, could the government present that and prevent removal? And yes, prevent. We think the government could do that with one caveat, that once the record closes, what is allowed under the regulation is a motion to reopen or to supplement the record. And that is entirely at the discretion of the immigration judge. Yeah, but it can be done. If the child died. Exactly. Then the fact that the child had been proved to be potentially harmed by the removal of the parent, you agree that that could be changed. The caveat, again, is that it's at the discretion of the immigration judge. What difference does that make? It makes differences insofar as. The discretion depends on whether a fact has happened. But they have extremely broad discretion as to whether or not to allow evidence. And there are cases in which joint motions from the government and the immigrant are denied in the judge's discretion. And the only review of that is the Board of Immigration Appeal. Those decisions are not reviewed by this court. And that evidence has to be new evidence. In other words, has to be an event that occurred after the closure of the record, such as the birth of a child. Such as the person aging. Well, that's a new event. That is something that the date of birth was true at the time. Yes, but you were just saying, I think, that it's not the birth certificate that's the proof. That shows the date of birth. Then the age changes every day. That's a new fact every day. When another day has passed, the person is one day older. And so if the government had done that, perhaps that would be a different case. That is not this case. Because what the government did here was never move to reopen the record. Never move to add new evidence. Why would you need to reopen the record to prove a change in age? I don't think you do, Your Honor. Of course not. Because what the statute says. The age is state. Once you prove age, I understand what you're saying about marriage. Potentially a child could be married. That might change things. But you can't change the proof of the age. The proof of the age is established early on. I agree. But the age itself, you can't stop it from continuing. But so that goes to when the relevant point in time to make that determination is. And I think that's the crux of this case. Of course age changes over time. But it cannot be that the government could reopen after a decision is issued and cancellation is granted. Which they have a right to do. They can reopen for new evidence if the child ages out. But that is, of course, just logic. Children will always age out. But the government cannot always reopen the record. You have limited time. And I want you to. So that's why I interrupted. Because I think we understand that point. Thank you, sir. But there's a. This is a very strange provision. Because what it should say is you can't be removed until your child becomes an adult.  But it doesn't. It depends on what happened at that particular moment. If the child is one day short of majority, then removal is prevented. And I think that. And in that context, it seems to me that the important date would have to be the date when you order. You confirm the removal. You order the removal of the alien. If I can take up 30 more seconds of my rebuttal time just to address why that cannot be right for a couple of reasons. First, this statutory provision is not a temporary status. It's not unlike temporary status applications. This is a cancellation of removal. So it's not tied to so long as the child is below 21. This is permanent. And that is why it matters what the relevant point in time is. And if it were the time of cancellation, I think that would lead to absurd results. And prove that there are ambiguous readings to the statute. And one is better and the other one is worse. Explain the. The absurd result will be some of the ones I was suggesting to earlier. For example, the government could reopen as soon as the child turns 21. If the child turns 21, 90 days after the decision is issued. So after cancellation is granted, you can still move to reopen. And if they move to reopen because the child turned 21, that would undo the cancellation of removal under the interpretation that Your Honor is suggesting. And you think that's an absurd result? It is because if the government, if Congress meant to do that, to tie the relief to the age so long as the child is 21. It wouldn't have asked whether or not the alien has established that they have, that removal would cause a hardship to a child. It would have said so long as the child is 21, you may obtain a temporary status visa and then you remain removable after your child ages out. But that is not what the provision does. And the other absurd conclusions would be that the agency could simply slow down the process, whether it's because of a meritorious appeal on the part of the applicant that takes years. Whether it's a recalcitrant agency that simply does not. But that can happen anyway, no matter how you decide this case. Well, but the record closes at a certain point in time, right? So if the agency simply takes a long time to issue the decision, that doesn't count against. So it could take a long time to, before you close the record. It can. And it does, often, unfortunately. It can, but that is why we think that there are two readings to this statute and neither one of them is, the plain text doesn't answer this question. But one reading is better because it avoids some of the absurdities that I was mentioning. And the other one is worse because it causes those absurdities. I actually had one more question for you. The 11th Circuit in Diaz-Arellano was in a similar posture as we are receiving this case. I was wondering what you thought of the analysis there, the statutory analysis, and why we shouldn't find that persuasive. Just one caveat. I don't know that the posture was exactly the same for a couple of reasons. One, the child had aged out before the hearing. The facts are the legal question. The statutory analysis is what I wanted to get your response to. And they departed from the assumption that the statute is not ambiguous, so that's a difference to the analysis. So bracketing those differences to the analysis, I think it's unpersuasive for a few different reasons. One is that the court emphasized that whether or not hardship to a child is established depends on the facts on the ground. These are the words of the court at the time of removal. The court went back and forth talking about the time of adjudication, the time of removal, but it emphasized that the way to read the provision is to ask at the time of removal, whenever that may be, and the agency may take years to effectuate a removal after an order. It may never go about doing that. Well, I thought the court seemed to be talking about – it used different terms, but it seemed to be referring to the time the decision is made as to whether to cancel removal, which is what this is all about. So the court – Will there be a cancellation of removal? That's what it all comes down to, and that's what the Eleventh Circuit relied on, which makes some sense. The majority did. Right, I understand. And I think that the dissent is more persuasive than the majority for a few different reasons. As I mentioned, I think the majority has problems. Judge, you can answer the question, but you tend to talk too much and repeat yourself, so please be very succinct. Go ahead and answer, but be succinct. Why wasn't the Eleventh Circuit correct in focusing on the decision, the time, the relevant time being the decision at hand, which is, was removal or cancellation of removal appropriate? So to avoid repeating some of the reasons I gave, I'll give you a new reason to maybe try to persuade you of that. As the dissent pointed out, what the majority does is change the subject of the relevant provision. It looks at what the immigration judge adjudicates rather than, as the provision says, if the alien establishes. It doesn't focus on the meaning of the word establishes and why that word was put in in 1996 and why the prior provision instead had the attorney general as its subject and asked if the attorney general in his or her opinion finds that the alien is a person whose removal would cause a hardship. There was a change to the subject. There was a change to the verb. The same verbs were kept for the other provisions of this 1229B1.  So we think that.  Thank you, Your Honors. Thank you. I appreciate it. In case I decide to be generous and give you a few seconds of rebuttal, be thinking about how you can say things very concisely.  Good morning, Your Honors, and may it please the court. Cori Farrell on behalf of the attorney general. Following the Supreme Court's decision in Loper-Bright, the court should hold that the board's construction of the cancellation of removal statute requiring that a qualifying relative exist at the time of an immigration judge's decision adjudicating the application is the best interpretation of the statute, even if this court affords no deference to the agency's interpretation. Accordingly, the court should again deny the portion of the petition for review challenging the agency's determination that petitioner was not eligible for cancellation of removal. I would like to start with this court's decision in Martinez-Perez. In that case, the court held that the statute at issue here is ambiguous and that the board has interpretive flexibility in that case. And that has not changed following Loper-Bright. And so the board interpreted the statute in Matter of Procedure, Zamorano, and that was just one case in a continuing long line of cases since 1961 where the board held that applications for relief are continuing. So since Matter of K in 1961, the board has held that applications for relief, such as cancellation of removal, are continuing. And the board interpreted that for the qualifying relative provision at issue here to mean at the time of the immigration judge's decision on the application. And that is, even post-Loper, that decision is still entitled to some deference, at least under Skidmore, because we have the agency's body of experience. And that's what we have all these cases holding that it is a continuing application that has the power to persuade. And even if there is no deference following Loper, the government's position is that the board's interpretation of the statute is the best reading. As the 11th Circuit held in Diaz-Arellano, that it is the time of the immigration judge's decision on the application, which is what is relevant, because that is when you look at whether there is a qualifying relative. So is the government no longer insisting that, notwithstanding the death of Chevron, that there is still discretionary authority in the statute here? Are you relying on that or not? There is still discretionary authority in the statute, yes, Your Honor. And that has not changed. You mean to interpret? Oh. To decide the issue before us, there's still discretion? Do you mean discretionary authority and granting cancellation of removal in the statute? I mean, if there is not deference in the way that we would understand deference in a Chevron world, where in the statute would you identify sort of that capacious discretion that the agency relies on to act? So in the government's brief, we point to 1103G2, which delegates authority to the agency. If that was the case, wouldn't we just be reinstating Chevron? It's a broad delegation of authority. That is a broad delegation. If that gives them authority to interpret and for us to provide deference, we might as well not be sitting here. I didn't get that argument. The difference, I think, here is that this is more of a process or a procedure where the agency is interpreting how to adjudicate these applications. And under Vermont Yankee, the agency can establish its own procedures in that way. And so because the statute is ambiguous, then the agency has this authority to carry out the procedure of when applications close and when the qualifying relative is established. It didn't seem that you addressed in your brief really the basic argument that the petitioner is making here regarding the meaning of the word establishes. Do you disagree with their interpretation of that term and giving it basic dictionary definitions? Your Honor, the government does disagree. And also, reading, focusing on the word establish is a bit too narrow to decide the best meaning of this statute. As the court determined in its since vacated decision in this case, establish also means convinced. And the immigration judge is not convinced until he or she rules on the application. And establish, it doesn't say when the applicant must establish. It just says establish. So the focus simply on the word establish is not enough to give us the best reading of the statute. I would say that the agency's interpretation of the statute here, it looks at the cap on the grant of cancellation. What about this statute gives us any reason to think that Congress intended us to read it in conjunction with the cap? The part of statutory interpretation is to read the statutes as a whole and not to eliminate one provision of the statute. It makes sense in the sense that you can read it and understand it without going to the limit. I guess I just don't understand why the limit. I understand as a practical matter why the agency considers that statute. But I don't understand from an interpretive matter how it fits in. Well, I would go back to my earlier point about the long history of holding that these applications are continuous applications. And Congress has knew for years that the agency treated these as continuous applications and made no attempt to change that. Congress also has made no attempt since to raise the cap from only $4,000 per year. So if you look at that, it shows that Congress has been okay with the agency's interpretation and application of this provision. And so it looks at the statutory scheme as a whole. And also the regulations do not permit an immigration judge to grant an application for cancellation of removal once the statutory cap has been reached. The regulations state that the immigration judge must reserve a decision at that time. Well, let me ask you about the word establishes. It seems that Petitioner, to me, makes a pretty good point. He points out that establishes is a different language from the other grounds. It occurred to me maybe that's to emphasize who has the burden of production and persuasion. But I'm curious what reason you can give for why the difference in the language in the subparagraph or whatever, D, from the other provisions. If you read the statute, the first three provisions apply to Petitioner. That Petitioner has been or the applicant has been physically present. The applicant has been a person of good moral character and the applicant has not been convicted. And then the last provision, D, discusses what the applicant must show in relation to a qualifying relative. So I think it would be difficult to phrase that last provision as has been because it refers to the qualifying relative and the hardship to the qualifying relative, not the applicant him or herself. Is that the original language for that provision? Was it ever expressed otherwise? Did it ever use different language? Under the suspension of deportation statute, the applicant could establish hardship to him or herself as well. So it was worded slightly differently. Did it use establishes? I don't have that in front of me, Your Honor, the language of that provision. But the other language was not changed. The language for A, B, and C was not changed. But in D, there was the change in language to introduce the last provision. Yes, Your Honor. And do you have an explanation for that? As I stated at that point, the applicant could show hardship to him or herself as well. To him or herself is all. And now it has been changed to the qualifying relative. Which of the provisions, A, B, C, and D, are continuing? Because you're just generally arguing that all of the requirements are continuing. But that's not really how it's been interpreted or how the agency interprets it, is it? The good moral character provision and the hardship provision are continuing. I believe the conviction is continuing, too, as well. Okay, so all but A are continuing? All but A. And does that make any sense in light of the fact that A and B both specifically refer to a 10-year period immediately preceding the date of the application? We're kind of all over the place, aren't we, when we're talking about continuing? Both A and B set the relevant period of time as not less than 10 years immediately preceding the date of the application. B is, you've been a person of good moral character during such period, which is the 10 years preceding the application. And yet you're saying the agency doesn't interpret one of those as continuing and it interprets the other as continuing, even though the statute specifically says, identifies the period. I'm trying to look at my notes to verify on B, but. I think that's correct. I'm just saying it doesn't make a lot of sense. And your argument that all of this is continuing isn't how the agency has interpreted it. Well, the agency has squarely held that D is continuing. I'm talking about A, B, C, and D because your argument. And why do we continue B, moral character, when it specifically identifies the period of time that is relevant? And your honor, with all due respect, that is not the question. I'm aware of that, but it is a question. You're asking us to interpret this statute that has been interpreted inconsistently by the agency and essentially courts all over the place. And so, I mean, to try to come up with a decision about what D means, when nobody's been consistent about even what A, B, and C mean in terms of the timing of the decision, or what's relevant, at what point, it's all over the place. I would say that the agency's interpretation is not all over the place. The agency has been consistent. What's the agency's interpretation of A and B? Does it interpret them consistently with the specific language of the statute? I don't know. I don't have in front of me how the agency has interpreted them together. But the agency has consistently interpreted the provision at issue. Are you talking about Isidro Zamorano? That's the case that you're... And Batista Gomez as well. Let me ask you about A, then. We're talking about 2229B, subsection B, paragraph 1, subparagraphs A and B. If, say, evidence came to light of bad moral character after the proceeding, but in the same sort of setting as here, could the board then deny cancellation of removal because of this new evidence? If the petitioner left the country for a while during that period and came back, could they deny cancellation of removal because subparagraph A no longer is satisfied? Do you know? I do not know that, Your Honor. I do know that up until the immigration judge's final decision, the immigration judge may consider intervening criminal history, for example. That would be something that the immigration judge could consider. And it would be a motion of the government to reopen the record? I don't believe that it would require a motion to reopen the record. It could possibly be a motion to reopen the record. The immigration judge can also recalendar proceedings and hold additional evidentiary hearings. But these are facts that could be considered prior to an immigration judge's decision on the case. And that is why the agency's interpretation is the best reading, because we do know that things change between a final hearing and a decision. Children get older. Criminal history occurs. Qualifying relatives may pass away. The question is whether the board can take into consideration those changes. And you said we should just stick to subparagraph D. But if it's treated differently from subparagraphs A, B, and C, that's important to us. And you're saying you don't know whether they could reconsider if the alien, the petitioner, left the country or did something establishing bad moral character in the interim. That's why we're asking this question. I think that's why I'm interested in the answer. Yeah. Okay. Thank you. Thank you, Your Honors. You've got a hard 30 seconds. I'm stopping you mid-sentence. I'm up for a challenge, Your Honor. Thank you, Your Honor. So let me start from the end. I think those are the reasons why the agency's interpretation should not be given skin more than friends. The statutory language is clear. A, B, talk about a particular period. If you look at Isidro Zamorano, page 831, the agency does consider A, does consider B continuing. That's the same reasons it gives to consider D continuing. That's not a reason interpretation of the statute. That is why it should not be given death threats. Second, if I may just posit an hypothetical. If an event happened. Oh, you're over. Yeah. Sorry. Thank you. If I may ask that this court grant a petition for review and remain to the BIA. That's understood. With instructions. Thank you. Thank you, counsel. Case is submitted and counsel are excused.